IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ADAM LEE PINKTON                                             PLAINTIFF

v.                                                           No. 3:17CV202-JMV

WARDEN LEPHER JENKINS
CONTRACT MONITOR BARBARA JAMES
MARSHALL COUNTY CORRECTIONAL FACILITY
BERNICE BROWN                                       DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Adam Lee Pinkton, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that: (1) the defendants interfered with his use of the grievance process; (2) the general conditions of his confinement were unconstitutionally harsh; (3) the defendants denied other inmates adequate medical care; (4) the defendants awarded educational certificates to other inmates, who did not earn them; (5) the defendants did not hold a fire drill in his unit for over a year; (6) the defendants denied him access to the court, and (7) Warden Lepher Jenkins retaliated against him for seeking redress for grievances.

**Factual Allegations**

**Improper Handling of Grievances**

All of Mr. Pinkton's claims involve his incarceration at the Marshall County Correctional Facility. At various times, Lt. Collins does not process inmates' grievances, including Mr. Pinkton's. Pinkton alleges that Warden Lepher Jenkins and Contract Monitor Barbara James have failed to properly supervise Collins. He states that he has raised some or all of the issues listed above through the grievance process, but the grievances have been either ignored or mishandled. He argues that an officer's statement, without accompanying physical evidence, should not be enough to find inmates guilty of rule infractions. Mr. Pinkton pursued the grievance process as to at least some of his claims. Some of those grievances were rejected because "Relief is beyond the power of the Mississippi Department of Corrections to grant." In these grievances, he requested that various MCCF or MDOC officials be terminated.

**Denial of Access to the Courts**

One of the grievances that Mr. Pinkton filed involved the failure Ms. Brown, director of the Inmate Legal Assistance Program, to provide him with case law and mail service so that he could send documents to the Mississippi Parole Board in support of his petition for parole. Ms. Brown did not send the documents, and the Parole Board denied his request.

**General Conditions of Confinement:**

**Inadequate staffing levels:**

Most of Mr. Pinkton's claims arise out of this allegation: contraband in the facility, inability to properly monitor inmates, moldy showers, unsanitary kitchen, inadequate exercise, and leaks from the ceiling. In a second amended complaint [13], Mr. Pinkton describes an episode that occurred *after* the filing of his original complaint during which guards put inmates in danger of attack by gang members. There was no incident, but when he and another inmate complained about it, the guards cuffed him,

locked him in the shower area for two hours, and said, "I'll kill you. You don't run shit. Warden Jenkins told us to lock you up in the shower."

**Contraband Present in the Facility:**

Mr. Pinkton makes the general observation that a great deal of contraband makes its way into the facility. To support this claim, Mr. Pinkton provided a copy of a bulletin for the inmates stating that the facility will go into lockdown to address the problem of excessive contraband.

**Moldy Showers:**

Mr. Pinkton complained about mold in the showers, and, in response to his complaint, the staff member stated that the prison provides inmates cleaning supplies three times per week, and it's up to the inmates to use them. Mr. Pinkton testified at his *Spears* hearing that he cleans the shower "every day". He uses the germicidal heavy-duty cleaner provided by prison staff, but neither his cleaning efforts nor those of others have removed the dark substance he believes to be mold. Not even a pressure washer could remove the substance from the shower grout.

**Excessively Hot Conditions:**

This is a general complaint regarding the use of fans, rather than air conditioning, at the Marshall County Correctional Facility in summertime, which have exacerbated his hypertension and caused him to become dizzy.

**Unsanitary Kitchen Conditions:**

Again, Mr. Pinkton alleges that the styrofoam containers holding inmates' meals sometimes have rodent droppings on them. He also alleges that the food is cold by the time it reaches the inmates. Mr. Pinkton stated that he has never seen a case where an inmate found rodent droppings in his food, and he, himself, has suffered no harm from the unsanitary conditions.

**Inadequate Exercise/outdoor Time:**

Due to inadequate staffing, inmates at the Marshall County Correctional Facility get very little exercise, either in the gymnasium or on the outdoor exercise yard. Inmates can go a month or more between opportunities to exercise.

**Leaks from the Ceiling in Two or Three Places:**

Mr. Pinkton identified the location of several leaks from the ceiling of his unit, and the resulting standing water on the floor constitutes a slip hazard.

**Only 20 Chairs for the 67 Inmates in His Unit:**

Prison staff came into Mr. Pinkton's 67-man unit one day and confiscated all but 20 chairs. Some inmates, including Mr. Pinkton, then acquired their own chairs. He complains that he has to stand or sit on the floor to watch football, eat, or do legal work. Each inmate in the unit may sit on his bunk; however, only 20 inmates at a time may sit on chairs in the day room, where they watch television or sit at a table to write.

**Denial of Adequate Medical Care:**

Mr. Pinkton alleges that the defendants provided inadequate medical care to another inmate, causing his death.

**Unearned Educational Certificates Awarded:**

Other inmates receive educational certificates without having earned them.

**No Fire Drills in Over a Year:**

The defendants have not held a fire drill in Mr. Pinkton's unit in over a year, though they have held fire drills in nearby units.

**Retaliation:**

Warden Lepher Jenkins retaliated against Mr. Pinkton for seeking redress for grievances.

**Discussion**

As an initial matter, the Marshall County Correctional Facility must be dismissed from this case, as it is not a proper defendant in a federal action filed under 42 U.S.C. § 1983. An entity's capacity to be sued must be determined by reference to the law of the state in which the district court sits. Fed. R. Civ. P. 17(b). In Mississippi, "sheriff's departments are not political subdivisions within the meaning of the [Mississippi Tort Claims Act]. Thus, the Sheriff's Department does not enjoy a separate legal existence, apart from [the county in which it is located]." *Brown v. Thompson,* 927 So.2d 733 (Miss. 2006). Similarly, Mississippi jails and prisons are not amenable to civil suit. *Campbell v. Thompson*, 2015 WL 5772535 (S.D. Miss.), *Simmons v. Harrison County Sheriffs Dept.*, 2015 WL 4742381 (S.D. Miss.) Mr. Pinkton has named the Marshall County Correctional Facility as a defendant in this case; however, jails and prisons are merely buildings, which are not amenable to suit. As such, the Marshall County Correctional Facility will be dismissed from this case, as it is not a proper defendant in an case filed under 42 U.S.C. § 1983.

The court will discuss the allegations which fail to state a claim below. The remaining allegations will proceed.

**Lack of Standing**

As to the following allegations, Mr. Pinkton claims that, though the defendants did not violate his rights, they violated the rights of others: (1) denial of adequate medical care, and (2) inmates have received educational certificates which they have not earned. A plaintiff in federal court must, however, assert his own rights, not those of others:

> [O]rdinarily a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."

*Rogers v. Brockette*, 588 F.2d 1057, 1060 (5th Cir. 1979) (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). As such, these two allegations must be dismissed for failure to state a claim upon which relief could be granted.

**Allegations Regarding Events Occurring After the Complaint Was Filed**

In his second amended complaint, Mr. Pinkton alleges that Warden Lepher Jenkins retaliated against him for complaining about the conditions of the Marshall County Correctional Facility. As set forth below, that claim must be dismissed because he could not have exhausted his administrative remedies prior to filing his original complaint. Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress meant for the exhaustion requirement to be an effective tool to help weed out the frivolous claims from the colorable ones:

> Prisoner litigation continues to 'account for an outsized share of filings' in federal district courts. *Woodford v. Ngo*, 548 U.S. 81, 94, n. 4, 126 S.Ct. 2378 (2006) (slip op., at 12, n.4). In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of non-meritorious claims does not submerge and effectively preclude consideration of the allegations with merit. *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).
>
> Congress addressed that challenge in the PLRA. What this country needs, Congress decided, is fewer and better prisoner suits. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits"). To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.

*Jones v. Bock*, 549 U.S. 199, 203 (2007).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory and non-discretionary. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012). These allegations involve events occurring *after* the filing of the instant case; as such, they must be dismissed for failure to exhaust administrative remedies.

### No Right to Prison Grievance Procedure

As to Mr. Pinkton's claims regarding the defendants' interference with the processing of his grievances, there is no constitutionally protected interest in the existence or adequacy of

prison grievance procedures. The United States District Court for the Norther District of Texas has explained this clearly:

> [A]n inmate does not have a constitutional entitlement to an adequate grievance procedure. *See e.g., Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (there is no constitutional right to participate in grievance procedures); Antonelli v. Sheahan, 81 F.3d 1422, 1430-31 (7th Cir. 1996) (inmates do not have a constitutional right to an adequate grievance procedure; any right to inmate grievance procedure is procedural, not substantive, right and, thus, state's inmate grievance procedures do not give rise to liberty interest protected by due process clause); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (inmates do not have a constitutional right to participate in grievance procedures); *Jenkins v. Henslee*, 2002 WL 432948, *2 (N.D. Tex. Mar 15, 2002) (NO. 3-01-CV-1996-R). Although an adequate grievance procedure is a condition precedent to filing a suit arising under § 1983, *see* 42 U.S.C. 1997e(a), its ineffectiveness or altogether absence does not give rise to a constitutional claim. Hence any alleged violation of the grievance procedure as alleged in Plaintiff's complaint does not amount to a constitutional violation.

*Giddings v. Valdez*, No. 3:06-CV-2384-G, 2007 WL 1201577, at *3 (N.D. Tex. Apr. 24, 2007).

The Fifth Circuit Court of Appeals has made a closely related ruling dispositive of the instant case:

> [The plaintiff] also alleged that prison officials failed properly to investigate his grievances and letters complaining about the conduct of the mail room and security staff. Insofar as he seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous. "[A] prisoner has a liberty interest only in 'freedom[s] from restraint ... impos[ing] *atypical* and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)). Thus, to the extent that Mr. Pinkton challenges the adequacy of the prison grievance process, that allegation must be dismissed for failure to state a claim upon which relief could be granted.

**General Conditions of Confinement**

"[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Taking into account the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the instant claims do not rise to the level of a constitutional violation. The plaintiff has not identified any "basic human need" which he was denied for an unreasonable period of time. *See Woods*, 51 F.3d at 581.

In this case, Mr. Pinkton's allegations regarding moldy showers, leaks from the ceiling onto the floor, inadequate seating, and lack of fire drills do not rise to this level. He is able to clean the shower "every day" with a powerful germ-killing cleaner, and at times someone cleans it with a pressure washer. These allegations do not rise to the level of a constitutional violation.

Mr. Pinkton's allegations regarding leaks from the ceiling onto the floor do not rise to the level of a constitutional claim. The presence of the leaks do not deprive Mr. Pinkton of a basic human need for an unreasonable period. This claim must be dismissed, as well.

Similarly, there is no constitutional right for each inmate to have his own chair, and Mr. Pinkton acknowledged that his unit is an open bay, and inmates may sit on their bunks. As such, no inmate is without a place to sit. Mr. Pinkton's issue is that only 20 of the 67 inmates in his unit may sit in the day room at one time. Thus, if more than 20 inmates wish to watch television or write at one

time, then some must either wait for a chair to become available – or sit on the floor. Again, this allegation does not constitute a violation of Mr. Pinkton's rights under the Constitution.

Finally, Mr. Pinkton has not shown that the decision by the defendants to hold fire drills in nearby units, rather than his own unit, constitutes a significant danger to his health or safety. The Eighth Amendment requires that prison officials provide adequate fire safety to inmates. *Ruiz v. Estelle* (*Ruiz I* ), 679 F.2d 1115, 1153 (5th Cir.), *modified,* 688 F.2d 266 (5th Cir. 1982). Though fire and electrical codes may assist in determining whether a lack of fire safety constitutes a violation of the Eighth Amendment, they are not determinative. *Ruiz I,* 679 F.2d at 1153; *Giovanni v. Lynn,* 48 F.3d 908, 912–13 (5th Cir.1995). The Eighth Amendment simply does not require that prisons meet fire and electrical codes. *Id.* Mr. Pinkton has not alleged that anyone suffered injury from fire or that his unit was particularly susceptible to fires; thus, these allegations do not state a valid federal claim under 42 U.S.C. § 1983. *Johnson v. Texas Bd. of Criminal Justice*, 281 F. App'x 319, 321–22 (5th Cir. 2008) (unreported).

## Claims Going Forward

Mr. Pinkton's claims regarding inadequate staffing levels, the presence of contraband in the facility, excessively hot conditions, unsanitary kitchen conditions, and inadequate exercise and outdoor time will, however, proceed. In addition, at his *Spears* hearing, Mr. Pinkton alleged that the actions of Bernice Brown constituted a denial of access to the courts and that Warden Lepher Jenkins retaliated against him for complaining about prison conditions. Those claims will also proceed.

## Defendants

The plaintiff has named the following defendants: Warden Lepher Jenkins, Barbara James, and the Marshall County Correctional Facility. At his *Spears* hearing, he made

allegations that Bernice Brown denied him access to the courts. As such, she will also be named as a defendant.

## Conclusion

For the reasons set forth above, the following allegations will be dismissed for failure to state a claim upon which relief could be granted: (1) denial of proper grievance procedures, (2) moldy showers, (3) leaky ceilings, (4) insufficient chairs, (5) denial of adequate medical care, (6) unearned education certificates, and (7) insufficient fire drills. In addition, the Marshall County Correctional Facility will be dismissed as a defendant in this case, as it is not a suable entity under Mississippi law.

The following claims will, however, proceed: (1) inadequate staffing levels (Jenkins, James), (2) excessive contraband in the facility (Jenkins, James), (3) unsanitary kitchen conditions (Jenkins, James), (4) excessively hot conditions (Jenkins, James), (4) inadequate exercise and time outdoors (Jenkins, James)), (5) denial of access to the courts (Brown), and (6) retaliation (Jenkins).

**SO ORDERED**, this, the 18th day of July, 2018.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE