# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**ADAM LEE PINKTON**                                                             **PLAINTIFF**

**v.**                                                                              **No. 3:17CV202-JMV**

**WARDEN LEPHER JENKINS**
**BARBARA JAMES**
**MARSHALL COUNTYCORRECTIONAL FACILITY**
**BERNICE BROWN**                                          **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Adam Lee Pinkton, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Defendant Lepher Jenkins has moved [40] for summary judgment, seeking dismissal of the plaintiff's allegations, arguing that none of the allegations involve him.[1] In addition, the documents presented with the motion for summary judgment reveal that the plaintiff has not exhausted his administrative remedies as to defendants Jenkins, James, or Brown. Further, the defendants have filed with the court a Suggestion of Death as to defendant Bernice Brown, and the plaintiff has not timely sought to substitute a party in her place. For the reasons set forth below, the instant motion [40] for summary judgment will be granted, and the instant case will be dismissed.

---

[1] After reviewing the grievances at issue in this case, it also appears that none of them involve defendant Barbara James.

## Allegations

The plaintiff's remaining claims against the defendants are that they: (1) maintained inadequate staffing levels at the Marshall County Correctional Facility ("MCCF") ( Jenkins, James); (2) permitted excessive contraband in the facility ( Jenkins, James); (3) maintained unsanitary kitchen conditions ( Jenkins, James); (4) provided inadequate exercise and outdoor recreation ( Jenkins, James); (5) retaliated against the plaintiff for complaining about the conditions at the facility (Jenkins); and (6) denied him access to the courts (Brown).

## Mr. Pinkton Has Not Exhausted Administrative Remedies as to Any Claim in This Case

Prisoners must first exhaust any available administrative remedies before seeking relief in federal court regarding their conditions of confinement. Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress meant for the exhaustion requirement to be an effective tool to help weed out the frivolous claims from the colorable ones:

> Prisoner litigation continues to 'account for an outsized share of filings' in federal district courts. *Woodford v. Ngo*, 548 U.S. 81, 94, n. 4, 126 S.Ct. 2378 (2006) (slip op., at 12, n.4). In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of non-meritorious claims does not submerge and effectively preclude consideration of the allegations with merit. *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).
>
> Congress addressed that challenge in the PLRA. What this country needs, Congress decided, is fewer and better prisoner suits. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (PLRA intended to "reduce the quantity and

> improve the quality of prisoner suits"). To that end, Congress enacted a variety of
> reforms designed to filter out the bad claims and facilitate consideration of the good.
> Key among these was the requirement that inmates complaining about prison
> conditions exhaust prison grievance remedies before initiating a lawsuit.

*Jones v. Bock*, 549 U.S. 199, 203 (2007).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory and non-discretionary. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to

determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. The Supreme Court has also recognized the need for a prisoner to face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. Under this statutory authority, the Mississippi Department of Corrections has set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. Nov. 6, 2000). On September 19, 2010, the ARP process was changed from three steps to two. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's legal claims adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The adjudicator screens the grievance and determines whether to accept it into the ARP process. *Id*. If accepted,

the grievance is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate. *Id.* If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate ARP form and sending it to the legal claims adjudicator. *Id.* The Superintendent, Warden or Community Corrections Director will then issue a final ruling, or Second Step Response – which completes the ARP process. *Id.* If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id.*

According to Ms. Collins, Mr. Pinkton has submitted six grievances regarding his stay at MCCF, but five were submitted *after* Mr. Pinkton filed the instant complaint, and none involve defendants Jenkins or James. See Exhibit "A," Affidavit of Jackie Collins, MCCF ARP Coordinator.[2] As a matter of reason, an inmate may not exhaust administrative remedies by filing a grievance *after* filing his federal § 1983 complaint. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); 42 U.S.C. §1997e(a). As such, none of those five grievances qualify to exhaust any claim in this case.

In addition, Mr. Pinkton never filed a grievance regarding the actions of Warden Lepher Jenkins or Barbara James. See Exhibit "A." As such, he has not exhausted his administrative remedies as to these two defendants.

The only grievance Mr. Pinkton submitted *before* he filed the instant suit involved defendant Bernice Brown, who is now deceased. He did not, however, pursue that grievance to completion. The ARP rejected Mr. Pinkton's grievance because he requested that MDOC discipline and terminate her employment – forms of relief beyond the scope of the grievance process. The rejection of a grievance for this reason does not constitute completion of the grievance process, and Mr. Pinkton never filed a

---

[2] The exhibits referenced in this memorandum opinion may be found in the instant Motion [40] for Summary Judgment.

corrected grievance about this matter. Therefore, he never exhausted available administrative remedies regarding his allegation that Bernice Brown interfered with his access to the courts. Hence, all of the plaintiff's claims against Jenkins, James, and Brown (the only defendants remaining in this case) must be dismissed without prejudice for failure to exhaust administrative remedies.

## Suggestion of Death as to Bernice Brown

On August 27, 2018, the defendants in this case filed a Suggestion of Death under Fed. R. Civ. P. 25 as to defendant Bernice Brown, notifying the court and the parties that she passed from this life on March 15, 2018. Under Fed. R. Civ. P. 25(a)(1), when a party files a Suggestion of Death, the opposing party must seek to substitute a different party within 90 days:

**Rule 25. Substitution of Parties**

**(a) Death**

(1) Substitution if the Claim is Not Extinguished. If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of the statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1). The plaintiff has not filed a motion to substitute a proper party for Ms. Brown, and the deadline to do so has expired. As such, the plaintiff's claims against defendant Bernice Brown must be dismissed with prejudice.

## Conclusion

For the reasons set forth above, the plaintiff's claims against defendants Warden Lepher Jenkins, Barbara James, and Bernice Brown will be dismissed without prejudice for failure to exhaust administrative remedies. In addition, the plaintiff's claims against defendant Bernice Brown will be dismissed with prejudice, as she has passed away, and the plaintiff did not seek to substitute a party for

her in a timely fashion.  Finally, as all of the remaining defendants will be dismissed, the instant case will be dismissed in its entirety.

**SO ORDERED**, this, the 7th day of March, 2019.

/s/   Jane M. Virden
UNITED STATES MAGISTRATE JUDGE